Mr. Freifeld, are you on the line? Yes, I am. And Mr. Swergold, you're on the line? Yes. Good morning, Your Honors. Good morning. Mr. Freifeld, you can proceed. Good morning. May it please the Court. Andrew Freifeld on behalf of UNL Alums. I hope to touch on two issues in my argument today. The first is the wrongful admission of the prior crimes evidence. And the second is the issue of prosecutorial misconduct presented on the 2020 docket. UNL Alums is not guilty of these charges. Once you take the testimony of Stephen Christopher off the table, and the government must concede that that is exactly what the jury did. The only admitted prior crimes evidence. This fact is proven by nothing less than two jury notes. The first on day one, where jurors basically asked whether Allums' ownership of the property, standing alone, put him into a conspiratorial relationship with his tenant, Kahin. Apparently dissatisfied with the court's response, jurors, now on day three, asked again for the law, quote, regarding liability of homeowner for drugs on property with intent to distribute, close quote. These jury notes spanning three days are a clear reflection of the slender read on which this verdict rests. And as this court held in McCallum, cited in Passam, in our brief, the strength of the government's case is the most important factor in determining harmlessness when prior crimes evidence has been admitted in error. As for the prior crimes evidence in say, the government claims they were admitted because Allums put knowledge and intent at issue. Meanwhile, the government's star witness, Christopher, testified that Allums personally sold him over 50 kilos of cocaine and hundreds of grams of crack cocaine on dozens of occasions, spanning an 18-month period. How in the world can Allums possibly put knowledge and intent at issue where the government's witness is saying that Allums knowingly handed him dozens of kilos of cocaine? Well, didn't his lawyer do exactly that in the opening? And he did it exactly the way a defense lawyer would and should. He said, as you said to us, you're going to hear from this guy, Christopher, well, don't believe anything that he has to say. And once you take that off the table, the only evidence that's really here is evidence under which his, there are things that he didn't really know about. Isn't that precisely what the opening was? The only aspect of what you said that is inaccurate, I submit, is in his opening, he said, it's not mere presence. He said there's nothing left to convict him. There's no other inculpatory evidence that remains. He was not claiming that things were going on. In no way did his opening claim that things were going on under his nose that he didn't know about. He said he was completely unassociated with Caheen's drug operation that he ran out of his own room. So that's where I disagree with your honor's characterization. As our brief shows, again, in reliance on the column, as a matter of law, Christopher's testimony eviscerated Allums' ability to interpose a no knowledge and intent virtually. The government thinks it can hide from McCollum by relegating its work to a mere footnote at page 32 of their brief. But we submit McCollum is the whole enchilada on this appeal. Here, as this court found there, it's hard to discern how the government thinks that prior crimes evidence was necessary to prove knowledge and intent, where according to the government's own witnesses, Allums is acting as Kingpin negotiating the sale of narcotics all the time. Turning to the issue presented on the 2020 docket, two issues are presented for the court's consideration. Was there prosecutorial misconduct? And two, whether there was prejudice. There is a finding of prosecutorial misconduct in the record. Judge Broderick specifically found in adjudicating Frazier's motion that the government learned of its misrepresentation and failed to inform the trial. Let me be clear, in no sense is Allums claiming that the prosecutorial misconduct was the misrepresentation that was made at trial. That clearly appears to have been the result of the government's negligence. The only prosecutorial misconduct that Allums is relying on as newly discovered evidence for purposes of the Rule 33 motion was the government's discovery of its error while it was preparing for summations and its failure to go to the court so that it could remediate. Again, so this finding of prosecutorial misconduct is at the Supplemental Appendix, page 185, in footnote 3. Well, in terms of prejudice, everyone was present for the examination, and everyone heard the question. The question was not phrased properly, but no one picked it up. I mean, in other words, it could have been discovered during the trial by counsel. Yes? Yes, that's true. My answer to that, Judge, and I don't know a lot about torts, but it seems analogous. I know that a negligent person who has caused an accident can admit their negligence and still claim that the other side had a last clear chance to avoid the error, and thereby at least it constitutes either contributory negligence, or I suppose it can exculpate him completely. I think this is a lot like that. While it's true that everyone made the same error while they were led by the government to the error, it's true that everyone made the same error, but then the government discovered it, and they could have pointed it out before summations, which I submit would have... So the error resulted in the government presenting evidence about Frazier's prior conviction, and that was many years earlier. There was no suggestion that Alums was involved in that prior conviction, so how was there prejudice to Alums? Alums made Frazier his witness. He was as much entitled to have an untainted testimony from Frazier as Frazier was. For example, he listened to Frazier's testimony, and then he made a decision on whether he should testify or not. That's one example. More importantly, though... I think the question is, what is it about the fact that Frazier was wrongfully tagged with something that he hadn't done? That is to say, an impression was created that he had given a false answer. What is it that Frazier testified to that was useful to Alums that makes this cell phone evidence, which showed that Frazier and Alums had a lot of contact? There was no evidence as to what the nature of the contact was, just that it was often. The government argued that that evidence constituted evidence of the conspiracy. Frazier testified that they had a concert promoting business going on at the time, and he put in evidence which showed negotiations, photographs taken out of town at the concert, things like that. That's one way that he supported Alums' defense, that all of that cell phone evidence was not inculpatory. Another way was he testified that he knew Alums for years and years and years, and he had no knowledge that Alums ever indulged in selling drugs. Finally, about the store, the government's whole theory was that the store was a big front. Frazier testified, I was in there now and then, I saw customers, I bought things when I was there, and he testified further that the government's theory was that Alums was there all the time. A police officer testified that over seven years, every day he passed by, he saw Alums present there. Frazier testified that Alums was only present sometimes, that the store was minded by his sister, who happened to live in the building, so that Alums wasn't there all the time. These are three examples where Alums used Frazier's testimony to support his theory of the defense. You have two minutes for rebuttal. Let's hear from the government. Thank you. Good morning, your honors. May it please the court. My name is Jason Swergold. I'm an assistant United States attorney in the Southern District of New York. I represent the government on appeal, and I represented the government before the district court. I just want to start by addressing the 404B argument. Then I can turn to the Rule 33 argument, if that works for the court. The evidence of trial showed that for years, Janelle Alums used his corner store as a front for a large-scale drug trafficking organization. But at trial, Alums advanced two defense theories that directly put his knowledge and intent at issue. We agree, they are proper defenses, but I think, as Judge Lynch noted, that does put his knowledge and intent at issue. It's a risk that you run. It's a risk that Judge Broderick cautioned defense counsel prior to trial that he was walking a very thin line because he clearly stated that he intended to argue that Alums did not know what was going on in his property. That's exactly what defense counsel did in his opening by both arguing that there was stuff going on in the property that was not attributable to Alums, and that the cooperators, as he called it, were a group of liars, and therefore directly attacking their credibility. Therefore, under pretty well-settled Second Circuit case law, those were two defenses that put his knowledge and intent directly at issue. Judge Broderick carefully considered both that the evidence was being used for proper purposes, that it was relevant, and that the probative value was not substantially outweighed by the potential for unfair prejudice, and gave two very careful limiting instructions. For those reasons, Judge Broderick did not abuse his substantial discretion when he admitted the prior act evidence. Turning to the Rule 33 argument, one thing I do want to clear up before then spending some time talking about prejudice is that there is no finding of prosecutorial misconduct by the district court. As he has in his brief, Mr. Freifeld appears to ignore that in the second Rule 33 briefing. The government continued to maintain when it learned about the mistake that it had made at trial. That was a mistake that we learned about in reading the first Rule 33 briefing from Darnell Frazier, the co-defendant. Judge Broderick noted that his prior assumption about the government's timing of the government's knowledge was actually inconsistent with the to make a finding on the record, because he found that he didn't have to, for two reasons that the court has already highlighted in its questioning. Well, Mr. Swergel, first of all, I think you may be right about what the judge did or did not find, and the judge declined, perhaps generously, not to make a finding on that subject. But I'm having, I think one of the things Mr. Freifeld argues is that it was conceded that the government noticed, and I think we're talking about you here, noticed before giving the summation that there was not, in fact, a contradiction between the evidence in the form of the conviction and the testimony that Mr. Frazier had given on the witness stand. Is that not correct, first of all, that that was acknowledged? That is correct and acknowledged, Your Honor. And what is not acknowledged or the defense that was proposed was that no one realized anymore that it was not just a question of, is this a good point you could make to the jury that there was a contradiction here, but that that was the whole basis on which the prior conviction had gotten in. This is Frazier's prior conviction, not Alums' issues, right? That's correct, Your Honor. It is Frazier's prior conviction. Yeah. And so the argument is that the government noticed that there was not, in fact, any tension between the conviction and the testimony, but did not realize that just, what, a day before, two days before, the government had argued that there was a contradiction and that's why this evidence of a prior conviction of Frazier's should be allowed. That's correct, Your Honor, and that is the, that's in the record, that is in our brief, that is exactly what happened. Why on earth would I believe that if I were the judge? It seems to me the 404B evidence with respect to Alums was a big deal. The government came back to that again and again until, and kept saying, now he's done it, now he's done it, now he's opened the door, until they got it in. Now you have an opportunity to do the same thing with respect to Frazier, is to get some damning prior conviction evidence in, and you get it on a particular representation that it would refute a particular question, and then it gets in. And then, like, essentially the next day, say, I'm not going to make that argument anymore because, hey, it didn't really contradict it. Without having any thought that maybe you had inadvertently made a misrepresentation to the court, that's what I'm being asked to believe, and that's what the judge would be asked to believe if he had to adjudicate whether there was any misconduct here. Is that right? That's right, Your Honor. That's correct, Your Honor, and a few points in response. First of all, in the comparison between the prior conviction, the admission of the prior conviction evidence as to Allums versus Frazier, the reason why the government kept coming back to it with respect to Allums is because that was Allums' entire defense, that he did not have the knowledge and intent and the attacking of the credibility of the cooperators. That is not the case with respect to Frazier. The government did not seek to admit this evidence as prior conviction evidence to prove knowledge and intent. No, it is admitted with respect to his credibility precisely because it contradicted something that he said. That's why it got in. No, that's correct, Your Honor, and that's why, but again, the reason why the government was so focused on the first one throughout the trial was because it was the defense asserted by Allums. This was a single moment in a rapid-fire cross-examination, and again, Your Honor, I'm limited to what the record is here, but as I explained to Judge Broderick, in preparing for closing and in looking for the pieces of evidence that we wanted to use in our closing, we were focused on the testimony and the evidence. We did not go back and look at the many lengthy sidebars and arguments that existed throughout the trial with respect to a particular piece of evidence, and I would submit that Judge Broderick is correct that there is no need to look into that at this because, one, all of the facts that are the basis for the claim of the actual claim of prejudice that Allums is trying to make are on the record. They were discovered by Frazier, Frazier's new counsel, and they could have been discovered by Allums' counsel, and second, there was no substantial prejudice here. Judge Broderick, who presided over the trial, who viewed the evidence, saw the cooperators, judged their credibility, was in the best position to make the determination about whether there was prejudice. He highlighted a number of key points, one, that it had nothing, Frazier's prior conviction had nothing to do with Allums and occurred over 13 years before Frazier met Allums. There was overwhelming additional evidence of guilt with respect to Allums, including the testimony of cooperators, controlled purchases from the property, seizure of drugs, trafficking evidence from the property, and phone records. Judge Broderick specifically found that he would not have granted a mistrial, which is one of the claims of prejudice that Allums proposes, and this idea that Allums made his defense about Frazier's testimony is simply belied by the record. Frazier was absent from the conspiracy and the store for lengthy periods of time because he was incarcerated and he was on parole in another county with a bracelet, so he couldn't go to the store in Yonkers. So, he could not exfiltrate Allums from the entire scope of the conspiracy. The closing was all about attacking the cooperators, and the evidence regarding, the evidence that Mr. Freifeld cited that he claims Allums relied on with respect to Frazier were contradicted by undisputed evidence in the record. For the linchpin of it, there's a one-page reference in the closing to this music business and Frazier's testimony about it. There's no tax returns to back up the music business claim, no correlation between the spikes in phone activity between members of the conspiracy and shows of a musician that they purported to work for. And again, the idea that Frazier could talk about the legitimacy of the store and whether Allums was or was not at the store, Frazier just simply wasn't there enough to be able to fully exfiltrate Allums from the scope of the conspiracy. So, for those reasons, I'm sorry, Your Honor? I said, why don't you finish up? Yeah, so unless the court has other questions, Judge Broderick did not abuse his discretion in denying the Rule 33 or in admitting the 404B evidence. Thank you. Mr. Freifeld, you have two minutes for rebuttal. Thank you. Allums' defense was not mere presence, nor was it lack of knowledge and intent. There was a building. The building is subdivided. Allums lived on one side. His nephew lived on the other side. All of the government's evidence pointed to the operation was out of Kaheem's apartment alone, unassociated with the store, unassociated with Allums' apartment. So that is not a defense of lack of knowledge and intent. That is a defense of someone else did it. Wasn't there evidence that two cooperators received drugs directly from Allums, personally from Allums? The jury completely rejected that argument. Completely. That was the point that I was initially making was the only evidence that inculcates Allums is the testimony of Stephen Christopher, period. The jury took the testimony of Stephen Christopher. What about Candace Sutherland? Didn't she testify that she received two envelopes of cocaine from Allums? Yes, she did. But her testimony was intricately tied to the testimony of Christopher. Wait a minute. If Christopher is lying about how many kilos in this constant business, why does that rule out the possibility that he was exaggerating that a Well, that means they were both lying. This is all very speculative. When you start saying what the jury thinks, jurors send out notes sometimes because there's one person who's got some problem or would only at one point in the deliberations convict on one particular theory. Who knows what they did or did not believe? You're acting as if there was some separate count that got an acquittal. Even then, it just means they didn't believe that particular count beyond a reasonable doubt. This is not how we do this, it seems to me. We look at what the evidence was that was in front of the court when the court made this decision about admitting this particular evidence. And then the judge has to look at, you know, we don't know what the jury is going to make of it. Maybe it'll believe this witness and not that witness. But we know that there is evidence as to which the testimony is, she got drugs from Allums. But the envelope was closed, if not sealed, and in her presence, no one looked inside it or referred to the contents. And then when she left Allums' presence, she looked inside it and saw that it was cocaine. And the testimony on cross tended to highlight the fact that Allums didn't say, here's the cocaine. She didn't say, I'm here to pick up the cocaine. And no one looked inside the closed envelope while she was present. So at that point, that's when the judge has to make the decision. The judge isn't retroactively making a decision as to admitting the evidence after the judge hears the jury notes. The Christopher's testimony was that he dealt him dozens and dozens of kilos and that Sutherland made a pickup for him twice. Then Sutherland testified that she did in fact make two pickups. And the government tried to show that they were very large to show that they were the same kilos that Christopher had said that he was picking up. What counsel did was he tried to show that Sutherland's lying. What's his name? The other guy, Christopher said that they were a kilo large envelopes. And here she's testifying that they're small envelopes. What counsel was saying is that means it never happened. Not that Christopher didn't, not that Allums handed him envelopes without knowing what they were. There's no contention that Allums ever handed Christopher envelopes without knowing what they were. So how could there be such a contention as to Sutherland when Sutherland and Christopher both testified that Sutherland's pickups were for Christopher? We have your point. The court will reserve decision. Thank you both.